VENABLE LLP
Ari N. Rothman (SBN 296568)
*anrothman@venable.com*
Josephine C. Hall (SBN 360230)
*jchall@venable.com*
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901

Attorneys for Defendant
O POSITIV, INC.

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JANE DOE 1 and JANE DOE 2, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

O POSITIV, INC.,

Defendant.

Case No. 3:25-cv-09895-VC

Hon. Vince Chhabria

**DEFENDANT O POSITIV, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF JANE DOE 2 AND STAY CASE OR ALTERNATIVELY, TO STRIKE CLASS CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*[Filed Concurrently with Declaration of Phoebe Lee]*

Hearing Date: March 19, 2026
Hearing Time: 10:00 A.M.

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 19, 2026, at 10:00 A.M. or as soon thereafter as the matter may be heard in courtroom 4 – 17th Floor of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendant O Positiv, Inc. will and hereby does move the Court to compel plaintiff Jane Doe 2 to arbitrate her claims and to stay this litigation pending completion of her arbitration. If the Court does not compel Jane Doe 2 to arbitration, then the Court should strike her class claims or otherwise preclude her from pursuing class relief.

O Positiv is entitled to the relief it seeks pursuant to the Federal Arbitration Act, 9 U.S.C. § 2, Federal Rule of Civil Procedure 12(b)(f), and the legal authorities cited in the accompanying Memorandum of Points and Authorities.

This motion is based on this notice, the accompanying Memorandum of Points and Authorities, the Declaration of Phoebe Lee, the complete court file, including the records and pleadings on file in this matter, and any other oral or documentary evidence that may be presented to the Court at the time of the hearing.

Dated: February 9, 2026

VENABLE LLP

By: Ari N. Rothman
Josephine C. Hall
*Attorneys for Defendant*
O POSTIV, INC.

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As part of her ongoing relationship with O Positiv, Jane Doe 2[1] visited the O Positiv website and input her email address and phone number to subscribe to receive email and text message marketing from O Positiv. By doing so, Jane Doe 2 agreed to O Positiv's Terms of Service which contain a mandatory arbitration provision and class action waiver that preclude her from pursuing any lawsuit in court much less class claims. Accordingly, O Positiv requests that the Court compel Jane Doe 2 to arbitrate her claims and to stay this litigation pending the outcome of the arbitration. Alternatively, O Positiv requests that the Court strike the class claims brought by Jane Doe 2 or otherwise preclude her from pursuing class relief if she remains in this litigation.

## II. FACTS

### *Jane Doe 2's Longstanding Customer Relationship with O Positiv*

Defendant O Positiv creates, markets, and sells health supplements to support women through all life stages. (Declaration of Phoebe Lee ("Decl.") at ¶ 2, attached hereto as Exhibit 1.) O Positiv operates the website http://www.opositiv.com where its products are sold. (Id.)

On October 21, 2025, plaintiffs' counsel emailed O Positiv with information related to plaintiffs' identities as part of pre-suit discussions. (Id. at ¶ 3.) In that email, plaintiffs' counsel provided the names and operative email addresses of the plaintiffs who are known in this lawsuit as Jane Doe 1 and Jane Doe 2. (Id.) O Positiv's records then revealed that Jane Doe 2 is a long time O Positiv customer who started doing business with the company in January 2021, and that she agreed to arbitrate and waive class claims during one of her O Positiv website visits. (Decl. ¶¶ 12–13.) Specifically:

O Positiv searched its electronically stored records for Jane Doe 2 using the name provided by plaintiffs' counsel. (Decl. ¶ 13.) O Positiv's search results showed that Jane Doe 2, using a

---

[1] Because the Court has not yet ruled on O Positiv's objection to plaintiffs' motion to proceed under pseudonyms, currently pending at ECF No. 14, O Positiv refers to the plaintiff subject to this motion as Jane Doe 2 herein and disclosed the name of that plaintiff to plaintiffs' counsel.

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

different email address than the one provided by plaintiffs' counsel, but using the same name, phone number, and city and state of residence, purchased a subscription to receive FLO – PMS Gummy Vitamins on a monthly basis from flovitamins.com, a website operated by O Positiv. (Id.) She purchased this subscription on January 12, 2021, and her last order shipped on November 11, 2024. (Id.)

Then, on July 6, 2025, Jane Doe 2 purchased on O Positiv's website, opositiv.com, a subscription to receive monthly shipments of FLO – Period Relief Gummy Vitamins. (Id.) Her last order shipped on January 15, 2026, and she has not cancelled her subscription. (Id.) Jane Doe 2 purchased additional products on O Positiv's website on July 8, 2025, and August 8, 2025. (Id. at ¶ 12.) Jane Doe 2's relationship with O Positiv continues to this day. (*See* id. at ¶ 13.)

***Jane Doe 2's Agreement to Arbitrate***

Jane Doe 2 alleges that she visited the O Positiv website in July 2025 and made a purchase on the website at that time. (Compl. ¶¶ 15–16.) O Positiv's records validated this allegation, and reflect that she subscribed to email and text message marketing using the email address provided by plaintiffs' counsel during a website visit on July 6, 2025. (Decl. ¶¶ 5-6; 12.) During her July 6 visit, Jane Doe 2 subscribed to email and text message marketing through pop-ups on O Positiv's website. (Id. at ¶ 7.) The following screenshot is representative of the first pop-up screen presented to Jane Doe 2 during her July 6 website visit:




(Id.) Jane Doe 2 clicked "SPIN" (because if she did not then O Positiv would not have captured her consent to receive emails or texts) which resulted in showing her this representative screenshot:




(Id.) In the above screenshot, the text just above the field marked "Email Address" states: "By submitting your email address, you consent to receiving our emails, and to our <u>Terms of Service</u>





VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

and Privacy Policy. You can unsubscribe from our emails at any time." (Id. at ¶ 8.) The button below the disclosure text reads "AGREE & SUBMIT." (Id.) Thus, by entering her email address and clicking "AGREE & SUBMIT," Jane Doe 2 agreed to be bound by the Terms of Service.

The Terms of Service to which Jane Doe 2 agreed, within the first four paragraphs and in all caps, state:

> THESE TERMS AFFECT YOUR LEGAL RIGHTS, RESPONSIBILITIES, AND OBLIGATIONS, GOVERN YOUR USE OF THE SERVICE, IS LEGALLY BINDING, LIMIT O POSITIV'S LIABILITY TO YOU, REQUIRE YOU TO INDEMNIFY O POSITIV, AND TO SETTLE CERTAIN DISPUTES THROUGH ARBITRATION. YOUR CONTINUED USE OF THE SERVICE AFFIRMS YOUR AGREEMENT TO THESE TERMS. IF YOU DO NOT WISH TO BE BOUND BY THESE TERMS OR ANY FUTURE MODIFICATIONS OR AMENDMENTS TO THESE TERMS, DO NOT USE OUR SERVICE.

(Decl., Ex. A at 2.) The Terms of Service also state:

> These Terms apply to and govern your access to and use of any website, mobile website, social media site, software, email exchange of information, and any other digital platform, including any services, features, pages, and functions contained or offered therein, including any transactions, orders, sales, purchases, or the acquisition of goods or products (collectively the "Service"), that are owned, operated, or provided by O POSITIV, Inc.'s or any of its subsidiaries, divisions, and affiliates ("O Positiv," "us," "we," or "our").

(Id. at 1.)

Later, the Terms of Service state:

> Any dispute, claim, or controversy arising out of or relating to these Terms, including the determination of the scope or applicability of this agreement to arbitrate, shall be submitted to and settled exclusively by binding arbitration, in accordance with the provisions of this section, subject only to any applicable requirement of law that you and O Positiv engage in a preliminary, non-binding mediation or arbitration. Binding arbitration shall be conducted in accordance with the American Arbitration Association's rules (the "AAA Rules").

(Id. at 16.) O Positiv maintains that the Court should enforce these provisions and grant this motion.

## III. LEGAL STANDARD

"[I]n deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement

covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "When faced with a petition to compel arbitration, the district court's role is a discrete and narrow one." *Lewis v. UBS Fin. Servs.*, 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011). "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Id.* (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). To require arbitration, the "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)).

"Once it is established that a valid agreement to arbitrate exists, the burden shifts to the party seeking to avoid arbitration to show that the agreement should not be enforced." *Olson v. World Fin. Grp. Ins. Agency, LLC*, No. 24-CV-00481-EJD, 2024 WL 3498245, at *3 (N.D. Cal. July 19, 2024) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000)).

## IV. ARGUMENT

### A. A Valid Agreement to Arbitrate Exists

A valid arbitration agreement exists with Jane Doe 2 under Ninth Circuit precedent.

In *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023), users had to click a confirmation button to complete their purchases. *Id.* at 515. The text above each confirmation button told users that, by clicking it, they agreed to the defendants' terms of use, and included a blue hyperlink to the terms. *Id.* at 515–16. The district court decision, which the Ninth Circuit affirmed, considered this screenshot of the page:

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900




*Oberstein v. Live Nation Ent., Inc.*, No. CV 20-3888-GW-GJSX, 2021 WL 4772885, at *2 (C.D. Cal. Sept. 20, 2021).

The Ninth Circuit found that these facts warranted compelling arbitration because "there is no dispute that the webpages themselves contained the notices, that the notices linked to the Terms, and that the Terms contained the arbitration provision." 60 F.4th at 518 (affirming the district court decision and finding). The Ninth Circuit also found that the language "By continuing past this page and clicking [the button], you agree to our Terms of Use" clearly denoted "that continued use will act as a manifestation of the user's intent to be bound." *Id.* at 516. Considering these features, the Ninth Circuit affirmed the district court's finding that plaintiff consented to arbitration and agreed that "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink." *Id.* Because the defendant's websites gave reasonably conspicuous notice of the terms, and because the plaintiffs manifested their assent by continuing with their purchases, the Ninth Circuit affirmed that the terms, "including the arbitration provision, were valid and binding." *Id.* at 517.

In *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024), the Ninth Circuit found a valid arbitration agreement existed where users were "required to advance through a sign-in screen which states 'By tapping "Play," I agree to the Terms of Service'" shown here:




2019 Version

*Id.* at 1010, 1014. The court reiterated that courts "must still evaluate the visual aspects of the notice under the two-part test we articulated in *Berman*" to determine "whether a website's notice is sufficiently conspicuous," which involves examining "the context of the transaction" and the "placement of the notice." *Id.* at 1019–20 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) and *Oberstein*, 60 F.4th 505).

In applying this two-part test, the Ninth Circuit first found that downloading a game was not a one-time transaction when in-app purchases were advertised and that "reasonable prudent users should expect […] their access to the game to be continual," thus satisfying the "context-of-the-transaction test." *Id.* at 1020. The court then found that the sign-in screens satisfied the "visual requirements to provide conspicuous notice that 'a reasonably prudent Internet user would have seen'" because directly below the "Play" button was language "By tapping 'Play' I agree to the





VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

Terms of Service" or "By tapping 'Play' I accept the Terms of Use and acknowledge the Privacy Policy," depending on the app version. *Id.* (quoting *Berman*, 30 F.4th at 856). The sign-in screen also lacked clutter and used "[c]ustomary design elements denoting the existence of a hyperlink." *Id.* at 1021. Accordingly, the Ninth Circuit found the "notice is conspicuous and puts the reasonable user on notice that they are agreeing to be bound by the Terms of Service." *Id.*

Other cases are in accord. In *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024), the court ruled that the website gave conspicuous notice of the Terms of Service and therefore an agreement to the Terms of Service was formed based on the following screen:




*Id.* at 922, 929–30. The court found that signing up for Coursera, an online learning portal, satisfied the "context of the transaction" requirement because, like *Keebaugh*, it was not a "one-and-done" traditional website transaction but users would expect to have an ongoing relationship with the site. *Id.* at 925. The court also found the above screen satisfied the "placement of the notice" requirement because the text of "Terms of Service" was darker and bolded, though not underlined, the font was "not so small that the contrast is not sufficient to make the [hyperlink]

apparent," and the "overall design and content of the [sign-up screen] […] was simple and uncluttered." *Id.* at 928–29 (internal quotation omitted). Finally, the court found that the user had "unambiguously manifested assent to the hyperlinked TOU" because the screen made "the assent-manifesting action—creating an account—clear, and clicking the 'Sign Up' button is the way to complete that transaction." *Id.* at 930.

Applying Ninth Circuit precedent, the court in *Kravets v. Anthropologie, Inc.*, No. 22-cv-60443-BLOOM/Valle, 2022 WL 1978712 (S.D. Fla. June 6, 2022) found that plaintiff was bound by terms containing an arbitration provision through the following screen:




*Id.* at *4. The court found the facts that the disclosure was directly above the "GET FREE SHIPPING NOW" button and contained "bold and underlined links to additional terms and conditions" was "sufficient to provide inquiry notice." *Id.* And, even "while Defendant did not use blue letters or capital letters to indicate that the hyperlinks were clickable, the hyperlinks are bolded and underlined to be 'sufficiently set apart from the surrounding text,'" making the terms conspicuous. *Id.* at *5 (citing *Berman*). The court further noted that in *Berman*, "there was no indication what action would constitute assent to [the] terms and conditions" and "the text of the button itself gave no indication that it would bind plaintiffs to a set of terms and conditions." *Id.*



VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

at *6 (quoting and applying *Berman*, 30 F.4th at 855–858 (9th Cir. 2022)). But, in the above screen at issue, "the button itself indicates that by clicking on it, Plaintiff would get free shipping and Plaintiff would be signed up for emails and texts from Defendant." *Id.* Thus, the court found unambiguously manifested consent to the terms. *Id.*

Applying Ninth Circuit precedent here leads to the same conclusion: O Positiv gave Jane Doe 2 reasonably conspicuous notice of its Terms of Service under *Berman*'s two-part test requiring the Court examine the context of the transaction and the placement of the notice, and she unambiguously manifested assent to those terms by entering her email address and clicking "AGREE & SUBMIT."

***First***, Jane Doe 2's interaction with the O Positiv demonstrates that the context of the transaction that bound her to arbitrate comprised a part of a longstanding and continuing relationship with O Positiv as opposed to one-time usage. Jane Doe 2 entered her email address and agreed to receive promotional emails, including "special offers and new product launches." (Decl. ¶ 7.) This is like in *Coursera* where the court found that "signing up for a continuing service like Coursera—is 'different than simply accessing a website,'" 737 F. Supp. 3d at 925, because agreeing to receive future promotional emails about new products after she had already purchased ongoing subscriptions starting in 2021 evidences that Jane Doe 2 engaged in a continuing relationship with O Positiv, rather than "simply accessing a website." *Id.* This also aligns with *Keebaugh*'s finding of an ongoing relationship where "reasonabl[y] prudent users should expect […] their access to the game to be continual." 100 F.4th at 1020. And, Jane Doe 2 has a longstanding relationship with O Positiv. On January 12, 2021, Jane Doe 2 purchased a monthly subscription through flovitamins.com, operated by O Positiv, and received shipments through November 11, 2024. (Decl. ¶ 13.) She then made several purchases on the O Positiv website: a purchase of a monthly subscription on the same day she agreed to arbitrate, July 6, 2025, with its most recent order being shipped on January 15, 2026, and two orders on July 8, 2025, and August 8, 2025, using a different email address. (Id. ¶¶ 12–13.) Thus, Jane Doe 2 is not a consumer who merely visited the O Positiv website one single time without further interaction, but rather

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

specifically requested future promotional emails about new products and sales and made many, many purchases over the last five years, and her relationship continues to this day. (Id.) Thus, the context of Jane Doe 2's transaction establishes an ongoing relationship between Jane Doe 2 and O Positiv such that she was put on notice of "the terms of that continuing relationship." *Oberstein*, 60 F.4th at 517 (finding the context of transaction, where users engaged in "a full registration process" reflected "the contemplation of some sort of continuing relationship that would have put users on notice for a link to the terms of that continuing relationship") (internal quotation omitted).

***Second***, the placement of the notice provided Jane Doe 2 conspicuous of the Terms of Service. In the screen where Jane Doe 2 agreed to arbitrate, the Terms of Service were conspicuously hyperlinked, as denoted by underlining typical of hyperlinks. (Decl. ¶ 7.) As in *Ghazizadeh* and *Kravets* where the Terms of Service hyperlink did not appear in blue, the text for the Terms of Service was still set apart by bolding or underlining and having minimal screen clutter, and by appearing adjacent to the call-to-action button. (Id.); *Ghazizadeh*, 737 F. Supp. 3d at 928–29; *Kravets*, 2022 WL 1978712, at *5. Additionally, the disclosure stating that by submitting her email address, Jane Doe 2 consented to the Terms of Service, was placed directly above the "Email Address" field, which in turn was directly above the "AGREE & SUBMIT" button. (Decl ¶ 7.) And, the disclosure language was in dark, contrasting text color from the light background; and, the screen lacked clutter. (Id.) Thus, "the notice is conspicuous and puts the reasonable user on notice that they are agreeing to be bound by the Terms of Service." *Keebaugh*, 100 F.4th at 1021.

Finally, Jane Doe 2 unambiguously manifested assent to the Terms of Service because she was "explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Ghazizadeh*, 737 F. Supp. 3d at 929 (quoting *Berman*, 30 F.4th at 857-58). The disclosure above the call to action stated "By submitting your email address, you consent to receiving our emails, and to our <u>Terms of Service</u> and <u>Privacy Policy</u>." (Decl. ¶¶ 7–8.) And, the call-to-action button states "AGREE & SUBMIT". (Id.)

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

Accordingly, application of the Ninth Circuit precedent discussed above demonstrates that Jane Doe 2 agreed to arbitration.

**B. Jane Doe 2's Claims Fall Squarely Within the Arbitration Agreement's Scope**

When an agreement contains an arbitration clause, a presumption of arbitrability applies, and doubts regarding whether the arbitration clause applies to the particular claims at issue should be resolved in favor of arbitration. *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The presumption in favor of arbitrability is particularly strong when the arbitration clause is broad. *Id.* For instance, arbitration clauses that apply to claims "arising out of or relating to" the agreement are considered broad provisions. *Khalatian v. Prime Time Shuttle, Inc.*, 188 Cal. Rptr. 3d 113, 119 (Cal. Ct. App. 2015) (finding such broad language to cover extracontractual disputes between parties).

The presumption in favor of arbitration applies unless it is rebutted by the agreement's language. *Capital Grp. Commc'ns Inc. v. Xedar Corp*, No. C–13–01793 EDL, 2013 WL 4013711, at *2–3 (N.D. Cal. Aug. 5, 2013); *Mundi v. Union Sec. Life Ins. Co*, 555 F.3d 1042, 1044 (9th Cir. 2009) ("In determining whether parties have agreed to arbitrate a dispute, we apply 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'") (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)).

Here, Jane Doe 2's claims against O Positiv fall squarely within the scope of the broad arbitration provision contained within O Positiv's Terms of Service. Jane Doe 2 agreed to arbitrate "[a]ny dispute, claim, or controversy arising out of or relating to these Terms, including the determination of the scope or applicability of this agreement to arbitrate." (Decl., Ex. A at 16.) She further agreed that:

> These Terms apply to and govern your access to and use of any website, mobile website, […] including any services, features, pages, and functions contained or offered therein, including any transactions, orders, sales, purchases, or the acquisition of goods or products (collectively the "Service"), that are owned, operated, or provided by O POSITIV, Inc.'s or any of its subsidiaries, divisions, and affiliates ("O Positiv," "us," "we," or "our").

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

(Id. at 1.) This broad arbitration provision unequivocally includes Jane Doe 2's claims at issue in this lawsuit because those claims arise out of Jane Doe 2's use of O Positiv's website. (Compl. ¶¶ 16–19.) And, Jane Doe 2 alleged that she made a purchase through O Positiv's website (Id. at ¶ 16), which is a "sale" under the Terms of Service and validated by O Positiv's records. (Decl. ¶¶ 12–13.) But even if there were doubts regarding the applicability of the arbitration provision to her claims, any such doubts must be resolved in favor of arbitration. *AT&T Techs.*, 475 U.S. at 650.

Where the presumption of arbitrability applies, as here, the court "can only deny arbitration if it can be said 'with positive assurance' that the dispute is 'not susceptible of an interpretation' that would cause it to fall within the arbitration clause." *United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 561 (9th Cir. 2008) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). No such positive assurance exists here where the arbitration provision is both broad and unrebutted by its own contractual language.

Accordingly, because a valid, binding arbitration agreement exists between O Positiv and Jane Doe 2 which covers her claims at issue in this case, the Court should compel her to arbitrate her claims.

**C. The Court Should Stay the Action Pending Resolution of the Arbitration**

The Court may stay an action pending resolution of claims compelled to arbitration. 9 U.S.C. § 3. "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of proceedings which bear upon the case," including arbitrations. *Levya v. Certified Grocers of Cal., Ltd.*, 593 F. 2d 857, 863–64 (9th Cir. 1979); *see also United States ex rel. Newton v. Neumann Caribbean Int'l Ltd.*, 750 F. 2d 1422, 1427 (9th Cir. 1985) (finding no error when district court stayed the action allow the arbitration to take place first).

Here, the Court should stay the entire action pending resolution of Jane Doe 2's arbitration to avoid duplication of efforts and wasting judicial and party resources. If Jane Doe 2 argues

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

during arbitration that her claims should be litigated in court (with which O Positiv disagrees), and the arbitrator(s) ultimately agrees, then Jane Doe 2 will find herself re-joining litigation that has proceeding apace without her, prejudicing the parties to the litigation and causing and scheduling confusion. While Jane Doe 2 arbitrates her claims, Jane Doe 1 will not suffer any prejudice; to the contrary, she and her counsel will need to duplicate efforts if Jane Doe 2 returns to court. Thus, to promote judicial efficiency and conserve resources, the Court should stay the entire action. *Cabrera v. Fox Television Stations, LLC*, No. 25-CV-07228-JD, 2025 WL 3526975, *3 (N.D. Cal. Dec. 9, 2025) (staying case pending arbitration); *Williams v. Moon Active Ltd.*, No. 4:25-CV-01626-YGR, 2025 WL 3551439 (N.D. Cal. Dec. 9, 2025) (same).

**D. Alternatively, the Court should strike Jane Doe 2's Class Claims**

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In deciding a motion to strike, courts may consider materials outside the pleadings. *Marco Holding Co. v. Lear Siegler, Inc.*, 606 F. Supp. 204, 213 (N.D. Ill. 1985) ("[I]f matters outside the pleadings are presented and considered, especially those testing the legal sufficiency of a defense, a Rule 12(f) motion can be transformed into a motion testing the factual and evidentiary, as well as the legal, basis for the challenged pleading and would serve much the same function as a motion for summary judgment.") (citing C. Wright & A. Miller, 5 Federal Practice & Procedure, § 1380 at 789 (1969)).

Here, the Terms of Service to which Jane Doe 2 agreed expressly precludes her from pursuing class claims:

> YOU AND WE ALSO AGREE TO WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL. ADDITIONALLY, UNLESS YOU AND WE AGREE OTHERWISE, EACH PARTY MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE ACTION OR PRIVATE ATTORNEY GENERAL PROCEEDING. […]

(Decl., Ex. A at 16.)

Accordingly, if the Court denies O Positiv's motion to compel Jane Doe 2 to arbitration,

O Positiv requests that the Court strike Jane Doe 2's class allegations or otherwise preclude her from pursuing class relief. Fed. R. Civ. P. 12(f); *Jeong v. Nexo Cap. Inc.*, No. 21-CV-02392-BLF, 2022 WL 3590329, at *16 (N.D. Cal. Aug. 22, 2022) (striking class allegations where court's review of Terms of Use confirmed terms barred class claims).

## V. CONCLUSION

For any and all of these reasons, the Court should compel plaintiff Jane Doe 2 to arbitrate her claims against O Positiv and stay this litigation pending the outcome of the arbitration. Alternatively, the Court should strike Jane Doe 2's class claims if she remains in the litigation.

Dated: February 9, 2026

VENABLE LLP

By: Ari N. Rothman
Josephine C. Hall
*Attorneys for Defendant*
O POSTIV, INC.

VENABLE LLP
2049 CENTURY PARK E, SUITE 3400
LOS ANGELES, CA 90067
TEL: 310-229-9900

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, Suite 2300, Los Angeles, CA 90067.

On, **February 9, 2026**, I served a copy ☒ / original ☐ of the foregoing document(s) described as **DEFENDANT'S MOTION TO COMPEL ARBITRATION OF JANE DOE 2** on the interested parties in this action addressed as follows:

| | |
|---|---|
| Ines Diaz Villafana<br>BURSOR & FISHER, P.A.<br>1990 North California Blvd., 9th Floor<br>Walnut Creek, CA 94596<br>Telephone: (925) 300-4455<br>Email: idiaz@bursor.com<br><br>Max S. Roberts<br>BURSOR & FISHER, P.A.<br>1330 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Telephone: (646) 837-7150<br>Email: mroberts@bursor.com | *Attorneys for Plaintiffs* |

☒ **CM/ECF: (FRCP 5(b)(2)(E)) and (L.R. 5-1(h):** Pursuant to FRCP 5(b)(2)(E) and Local Rule 5-1(h), I served the above stated document by e-file via the Court's Electronic Filing System, upon the counsel on the Court's Service List.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **February 9, 2026**, at Los Angeles, California.

Jerod Williams